## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JOYCE MCCLANE,**

**Plaintiff,**                                        **Case No. 2:18-cv-13774**

**v.**

                                                      **Judge: Bernard A. Friedman**

**GENESEE COUNTY ROAD**                               **Magistrate:**
**COMMISSION,**                                       **Stephanie Dawkins Davis**

**Defendant.**

_____/

| | |
|---|---|
| Kathleen L. Bogas (P25164) | Thomas H. Derderian (P35106) |
| Brian E. Koncius (P69278) | Wendy S. Hardt (P45493) |
| BOGAS & KONCIUS, P.C. | MICHAEL R. KLUCK & ASSOC. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 31700 Telegraph Road, Ste. 160 | 4265 Okemos Road, Suite G |
| Bingham Farms, MI 48025 | Okemos, MI 48864 |
| (248) 502-5000 | (517) 349-7610 |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## Oral Argument Requested

NOW COMES Defendant, Genesee County Road Commission, pursuant to

Fed.R.Civ.P. 56, and files its Motion for Summary Judgment in the above case on the

following grounds:

1.     That on November 26, 2019, in accordance with E.D. Mich LR 7.1(a),

Defendant's counsel informed Plaintiff's counsel of the nature of

Defendant's Motion for Summary Judgment in order to obtain concurrence in the relief sought.

2.     That concurrence in the relief sought was not granted by Plaintiff's counsel, necessitating Defendant to move the Court for an Order granting the relief sought in the Motion.

3.     That there are no genuine issues of material fact present in this case, and, therefore, judgment should be entered in favor of Defendant as a matter of law.

4.     In support of its Motion, Defendant tenders the following:

a.     Brief in Support of Summary Judgment; and,

b.     The relevant pages and exhibits from the depositions taken in this case.

WHEREFORE, Defendant Genesee Count Road Commission requests the Court to enter an Order for Summary Judgment under Fed.R.Civ.P. 56.

Respectfully submitted,

MICHAEL R. KLUCK & ASSOCIATES

Dated: December 2, 2019          By:     s/ Thomas Derderian
                                          Thomas H. Derderian (P35106)
                                          Attorneys for Defendants
                                          4265 Okemos Road, Suite G
                                          Okemos, MI 48864
                                          (517) 349-7610
                                          derderiant@klucklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of December, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Kathleen L. Bogas and Brian E. Koncius (attorneys for Plaintiff), and I hereby certify that I have mailed by United States Postal Service the Paper(s) to the following non-ECF participants: None.

/s/ Thomas H. Derderian
Michael R. Kluck & Associates
4265 Okemos Road, Suite G
Okemos, MI 48864

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---

**JOYCE MCCLANE,**

              **Plaintiff,**

**v.**

**GENESEE COUNTY ROAD
COMMISSION,**

           **Defendant.**

**Case No. 2:18-cv-13774**

**Judge: Bernard A. Friedman
Magistrate:
Stephanie Dawkins Davis**

_____/

Kathleen L. Bogas (P25164)
Brian E. Koncius (P69278)
BOGAS & KONCIUS, P.C.
Attorneys for Plaintiff
31700 Telegraph Road, Ste. 160
Bingham Farms, MI 48025
(248) 502-5000

Thomas H. Derderian (P35106)
Wendy S. Hardt (P45493)
MICHAEL R. KLUCK & ASSOC.
Attorneys for Defendants
4265 Okemos Road, Suite G
Okemos, MI 48864
(517) 349-7610

---

## <ins>DEFENDANT'S BRIEF IN SUPPORT OF ITS<br>MOTION FOR SUMMARY JUDGMENT</ins>

NOW COMES Defendant, Genesee County Road Commission, and files this

Brief in Support of its Motion for Summary Judgment.

## TABLE OF CONTENTS

Index of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of Issues Presented  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Material Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE
           CASE OF RACE OR AGE DISCRIMINATION UNDER
           TITLE VII OR ELCRA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE
           CASE THAT SHE WAS RETALIATED AGAINST IN
           VIOLATION OF TITLE VII OR ELCRA  . . . . . . . . . . . . . . . . . 16

    III.   DEFENDANT HAD LEGITIMATE, NON-DISCRIMINATORY
           REASONS FOR ITS ACTIONS WITH REGARD TO PLAINTIFF,
           WHICH REASONS WERE NOT PRETEXTUAL  . . . . . . . . . . . 20

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

## Case Law:

<u>Anderson</u> v <u>Liberty Lobby, Inc.</u>  477 U.S. 242; 106 S. Ct. 2505;
91 L. Ed. 2d 202 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Barnett</u> v <u>Department of Veterans Affairs</u>, 153 F.3d 338 (6th Cir. 1998),
cert denied, 525 U.S. 1106 (1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Barrett</u> v <u>Kirtland Cmty. Coll.</u>, 245 Mich. App. 306;
628 N.W.2d 63 (2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Bowman</u> v <u>Shawnee State Univ</u>, 220 F.3d 456 (6th Cir. 2000)  . . . . . . . . . . . . . . 10

<u>Burlington Northern & Sante Fe Ry</u> v <u>White</u>, 548 U.S. 53;
126 S.Ct. 2405; 165 L.Ed.2d 345 (2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Canderm Pharmacal, Ltd.</u> v <u>Elder Pharmaceuticals, Inc.</u>,
862 F.2d 597 (6th Cir. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Celotex Corp.</u> v <u>Catrett</u>, 477 U.S. 317; 106 S. Ct. 2548;
91 L. Ed. 2d 265 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Edgar</u> v <u>JAC Prods, Inc.</u>, 443 F.3d 501 (6th Cir. 2006)  . . . . . . . . . . . . . . . . . . 21

<u>Grosjean</u> v <u>First Energy Corp.</u>, 349 F.3d 332 (6th Cir. 2003),
cert denied, 541 U.S. 1010 (2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Hegwood</u> v <u>Pharmacia/Upjohn</u>, 985 F. Supp. 728 (W.D. Mich. 1997)  . . . . . . . . 10

<u>Kocsis</u> v <u>Multi-Care Mgmt</u>; 97 F.3d 876 (6th Cir. 1996)  . . . . . . . . . . . . . . . . . . 16

<u>Lytle</u> v <u>Malady</u>, 458 Mich. 153; 579 NW2d 906 (1998)  . . . . . . . . . . . . . . . . . . . 9

<u>Matsushita Elec. Indus Co. Ltd</u> v <u>Zenith Radio Corp</u>, 475 U.S. 574;
106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McDonnell Douglas Corp. v Green, 411 U.S. 792; 93 S.Ct. 1817;
36 L.Ed. 2d 668 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

McKay v Toyota Motor Manufacturing, USA, Inc.,
878 F. Supp. 1012 (E.D. Ky 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Michael v Caterpillar Fin Servs Corp, 496 F.3d 584 (6th Cir. 2007) . . . . . . . . . . 17

Nguyen v City of Cleveland, 229 F.3d 559 (6th Cir. 2000) . . . . . . . . . . . . . . . . . 19

Ondricko v MGM Grand Detroit, LLC, 689 F.3d 642 (6th Cir. 2012) . . . . . . . . . . 9

Policastro v Northwest Airlines, Inc., 297 F.3d 535 (6th Cir. 2002) . . . . . . . . . . 16

Polk v Yellow Freight Sys, Inc., 876 F.3d 527, 531 (6th Cir. 1989) . . . . . . . . . . 17

Potter's Medical Center v City Hospital Ass'n, 800 F.2d 568 (6th Cir. 1986) . . . . 7

Seeger v Cincinnati Bell Tel. Co., 681 F.3d 274 (6th Cir. 2012) . . . . . . . . . . . . . 20

St. Mary's Honor Ctr. v Hicks, 509 U.S. 502; 113 S.Ct. 2742;
125 L.Ed.2d 407 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Talley v Bravo Pitino Rest, 61 F.3d 1241 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . 10

Texas Dep't of Community Affairs v Burdine, 450 U.S. 248;
101 S.Ct. 1089; 67 L.Ed.2d 207 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States Postal Serv Bd of Governors v Aikens, 460 U.S. 711;
103 S.Ct. 1478; 75 L.Ed.2d 403 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Valentine-Johnson v Roche, 238 F. Supp. 2d 911 (E.D. Mich. 2003) . . . . . . . . 10

Wilcoxon v 3M, 235 Mich. App. 347; 597 N.W.2d 250 (1999) . . . . . . . . . . . . . 10

Yates v Avco Corp, 819 F.2d 630 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes:**

42 U.S.C. 2000e(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. 2000e-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

M.C.L. 37.2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

M.C.L. 37.2701(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Miscellaneous:**

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE ISSUES

I.    Whether Plaintiff can establish a prima facie case of race or gender discrimination under Title VII or the ELCRA?

> Defendant answers, "No."

> Plaintiff answers, "Yes."

II.   Whether Plaintiff can establish that she was retaliated against in violation of Title VII or the ELCRA?

> Defendant answers, "No."

> Plaintiff answers, "Yes."

III.  Whether Defendant had  legitimate, non-discriminatory reasons for its actions with regard to Plaintiff, which reasons were non-pretextual?

> Defendant answers, "Yes."

> Plaintiff answers, "No."

## PROCEDURAL BACKGROUND

Plaintiff filed her Amended Complaint in this action on December 5, 2018, alleging race and gender discrimination and retaliation under Title VII and the Michigan Elliott-Larsen Civil Rights Act.  Plaintiff alleges that this discrimination and retaliation primarily occurred when her title was changed from Purchasing Manager to Senior Purchasing Coordinator in 2017, she was placed on administrative

leave with pay during an investigation that same year, and her employment was terminated in July 2018 after she had been on medical leave for a full year. Defendant has denied all material allegations of discrimination and retaliation and now moves for summary judgment on all causes of action alleged in Plaintiff's Amended Complaint.

## STATEMENT OF MATERIAL FACTS

Plaintiff was first hired by Defendant Road Commission on June 24, 1981 as an Account Clerk I.  (Exhibit 1; see also Plaintiff's Deposition at p. 26, attached hereto as Exhibit 2).  On October 1, 1983 she was promoted to an Account Clerk II. (Exhibit 3; see also Exhibit 2 at p. 28).  Thereafter, she was promoted to a Senior Accountant position on April 8, 1987.  (Exhibit 4; see also Exhibit 2 at p. 29).

In that position, Plaintiff was supervised by a white female named Carol Klenow.  (Exhibit 2 at pp. 30-31). As would become a pattern throughout her employment, Plaintiff did not get along with Ms. Klenow and felt that raises and promotions were being withheld from her. (Exhibit 5).  She felt that Ms. Klenow was racially discriminating against her.  (Id.)  By way of example, Plaintiff felt discriminated against when Ms. Klenow called her "my little sunshine."  (Exhibit 2 at p. 30).  On October 4, 1993, she went on a medical leave of absence, refused to return to work following an independent medical examination which concluded there

was nothing wrong with her, was terminated, and filed a lawsuit against the Road Commission on April 26, 1994, alleging a hostile work environment. (Exhibits 6 and 7). Ultimately, that case was settled, and Plaintiff was rehired by the Road Commission as its Purchasing Coordinator on August 19, 1996. (Exhibit 8).

Once reemployed by the Road Commission, Plaintiff continued to frequently demand raises and promotions. One such request was made to her supervisor, Tim Sabin, on November 3, 1999. (Exhibit 9). Another such request was made to the Managing Director, John Daly, on May 6, 2003. (Exhibit 10). Notably, in her position as Purchasing Coordinator, Plaintiff had received frequent raises. (Exhibits 11-15). Nonetheless, in an attempt to appease Plaintiff on July 1, 2003, Defendant Road Commission moved Plaintiff from salary level 1 to salary level 3 in her job classification. (Exhibit 16). She continued to receive raises thereafter. (Exhibits 17 and 18).

In October 2012, Plaintiff was promoted to the position of Purchasing Manager. (Exhibits 19 and 20). The promotion was recommended by her supervisor, Melissa Williams, a white female. (Dep. of Melissa Williams at pp. 23-24, attached as Exhibit 21). Despite the promotion, Plaintiff felt that Ms. Williams, the Finance Director, was retaliating against her. She filed two separate complaints against Ms. Williams, one in December 2015 and one in April 2016. (Exhibits 22 and 23). After

-3-

receiving the first complaint, John Daly removed Plaintiff from Ms. Williams'
supervision and placed her under his direct supervision. (Exhibit 24). Ultimately,
Plaintiff was placed under the supervision of the Director of Human Resources and
Administrative Services, Makini Jackson, a black female. (Exhibit 25). Neither of
Plaintiff's complaints against Ms. Williams alleged discrimination on the basis of
race or gender. As a consequence of the second complaint, Ms. Jackson engaged the
Director of Genesee County Human Resources and Labor Relations, Anita Galajda,
to perform an independent investigation and review. (Exhibit 26). After interviewing
all parties, Ms. Galajda concluded that no retaliation had occurred. (Id). Around that
same time, Melissa Williams left the Road Commission for other employment.
(Exhibit 21 at p. 13).

Makini Jackson was terminated by Defendant Road Commission in October
2016, and shortly thereafter, in November 2016, Defendant Road Commission hired
a new Director of Human Resources & Administrative Services, Donna Poplar, a
black female, who would be Plaintiff's direct supervisor. In March 2017, Plaintiff
filed a series of three (3) complaints against Ms. Poplar in rapid succession. (Exhibits
27, 28, and 29). The first of these complaints was dated March 14, 2017 and
indicated that Ms. Poplar was creating a hostile work environment for her by
threatening to demote her, remove her secretary, and move her office. (Exhibit 27).

The second complaint was filed on March 21, 2017 and indicated Ms. Poplar had spoken in a bullying manner at a staff meeting the previous day. (Exhibit 28). The third complaint was filed on March 23, 2017 and indicated that Ms. Poplar was discriminating against her by siding with two (2) white employees, the new Finance Director and the Equipment Director, against her.  (Exhibit 29).

Upon receiving the third of these complaints, which implicated not only Ms. Poplar but also two (2) other management employees, John Daly placed Plaintiff on administrative leave with pay so that her concerns could be fully investigated. (Exhibit 30).  This leave was not at all disciplinary in nature, but designed to place some distance between the parties while the complaints could be investigated.  (Dep. of John Daly at pp. 58-59, 65-66, attached hereto as Exhibit 31).  Mr. Daly engaged Kendall Williams, a local highly respected attorney well-versed in labor and employment law, to conduct the investigation. (Id. at pp. 57-58). He also happens to be African-American.   After a full investigation, Mr. Williams concluded that Defendant had not violated any state or federal civil rights laws relative to the employment of Plaintiff.  (Exhibit 32).  Plaintiff was notified of the results of this investigation.  (Exhibit 33).

Thereafter, Plaintiff was directed that she should return to work on July 10, 2017.  (Exhibit 34).  She was informed upon her return to work that her title was

-5-

being changed to Senior Purchasing Coordinator with no change in compensation or responsibilities. (Exhibit 35; see also Exhibit 2 at pp. 133-134). Several other employees' job titles were also changed from Manager to Coordinator at the same time. (Exhibit 2 at p. 134; see also Dep. of Donna Poplar at pp. 78-80, attached hereto as Exhibit 36). None of the other employees had any issue with the change in title. Additionally, Stephanie Jaeger, Plaintiff's assistant underwent a title change from Purchasing Secretary to Purchasing Associate. (Id). Despite this title change, Plaintiff and Ms. Jaeger were going to continue to carry out the purchasing functions of Defendant Road Commission together and had worked out an agreement as to how their duties would be split. (Id; see also Exhibit 37). Instead of following through with this plan, Plaintiff went off work on a medical leave on July 20, 2017. (Exhibit 2 at pp. 131-133). Under Defendant's policies, Plaintiff was eligible for short-term disability for a period of one (1) year, after which, if she was unable to return to work, her employment would be terminated. (Exhibit 36 at pp. 50, 70-71). When Plaintiff did not return to work, Ms. Poplar sent her notice of termination of July 20, 2018. (Exhibit 38).

Thereafter, Plaintiff filed this action, asserting claims of race and gender discrimination and retaliation under Title VII and Michigan's Elliott-Larsen Civil Rights Act.

-6-

## **STANDARD OF REVIEW**

Summary judgment is appropriate where the pleadings, depositions, and "affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c); Canderm Pharmacal, Ltd. v Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). The court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v Liberty Lobby, Inc. 477 U.S. 242, 251-52; 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986).

Once the moving party shows that there is an absence of evidence to support the non-moving party's case, the non-moving party has the burden of coming forward with evidence raising a triable issue of fact. See Celotex Corp. v Catrett, 477 U.S. 317, 324; 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). To sustain this burden, the non-moving party "may not rest on the mere allegations of her pleadings. Instead, she must set forth specific facts showing that there is a genuine issue for trial." McKay v Toyota Motor Manufacturing, USA, Inc., 878 F. Supp. 1012, 1013 (E.D. Ky 1995) [citing Potter's Medical Center v City Hospital Ass'n, 800 F.2d 568 (6th Cir. 1986)]. Although inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, the non-moving party "must do more than

-7-

simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus Co. Ltd v Zenith Radio Corp, 475 U.S. 574, 586; 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986).

## **ARGUMENT**

I.    PLAINTIFF WILL BE UNABLE TO ESTABLISH A PRIMA FACIE CASE OF RACE AND GENDER DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 OR THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT.

Title VII prohibits any employer with at least fifteen (15) employees from discriminating against an applicant or employee because of that person's race, color, religion, sex, or national origin.   42 USC 2000e(b), 2000e-2(a).   Similarly, the Michigan Elliott-Larsen Civil Rights Act prohibits discrimination against an employee based on that person's race, color, religion, national origin, age, sex, height, weight, or marital status.   MCL 37.2202.   Discrimination claims that rely on circumstantial, rather than direct, evidence utilize the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v Green, 411 U.S. 792; 93 S.Ct. 1817; 36 L.Ed. 2d 668 (1973).   Under this framework, a plaintiff must first establish a prima facie case.   Id. at 802.   If the Plaintiff successfully proves a prima facie case, the burden of production, but not proof, shifts to the employer "to articulate some legitimate, non-discriminatory reason" for the adverse action.   Id.   If the Defendant

-8-

meets its burden of production, the presumption arising from the plaintiff's prima facie case drops from the case. <u>St. Mary's Honor Ctr.</u> v <u>Hicks</u>, 509 U.S. 502; 113 S.Ct. 2742; 125 L.Ed.2d 407 (1993). To prevail at that point, the plaintiff must carry the ultimate burden of persuasion by proving by a preponderance of the evidence that the defendant intentionally discriminated against him or her because of membership in the protected class. <u>United States Postal Serv Bd of Governors</u> v <u>Aikens</u>, 460 U.S. 711, 715-716; 103 S.Ct. 1478; 75 L.Ed.2d 403 (1983); <u>Texas Dep't of Community Affairs</u> v <u>Burdine</u>, 450 U.S. 248, 252-256; 101 S.Ct. 1089; 67 L.Ed.2d 207 (1981); <u>McDonnell Douglas</u>, 411 U.S. at 802-805; <u>Lytle</u> v <u>Malady</u>, 458 Mich. 153; 579 NW2d 906 (1998). To carry this ultimate burden, the plaintiff must prove not only that the reasons the defendant articulated were a pretext, but also that the reasons were a pretext for discrimination. <u>Hicks</u>, 509 U.S. at 504-516; <u>Lytle</u>, 458 Mich. at 174.

To establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected group, (2) qualification for the position, (3) adverse employment action, and (4) replacement by a nongroup member. The fourth element may also be established by showing that similarly situated persons that are not in the protected class were treated differently than the plaintiff. <u>Ondricko</u> v <u>MGM Grand Detroit, LLC</u>, 689 F.3d 642 (6th Cir. 2012); <u>Grosjean</u> v <u>First Energy Corp.</u>, 349 F.3d

332 (6th Cir. 2003), cert denied, 541 U.S. 1010 (2004); <u>Talley</u> v <u>Bravo Pitino Rest</u>, 61

F.3d 1241, 1246 (6th Cir. 1995); <u>Hegwood</u> v <u>Pharmacia/Upjohn</u>, 985 F. Supp. 728

(W.D. Mich. 1997).  When the existence of an adverse employment action is at issue,

the following standard is used by Michigan courts to determine whether an

employment action is adverse:

> 1.  The action must be materially adverse in that it is more than a "mere inconvenience or an alteration of job responsibilities."
>
> 2.  There must be some objective basis for demonstrating that the change is adverse because "a plaintiff's subjective impressions as to the desirability of one position over another [are] not controlling."

<u>Wilcoxon</u> v <u>3M</u>, 235 Mich. App. 347, 364; 597 N.W.2d 250 (1999).  Additionally,

"the Sixth Circuit has consistently held that de minimus employment actions are not

materially adverse and thus, not actionable."  <u>Valentine-Johnson</u> v <u>Roche</u>, 238 F.

Supp. 2d 911 (E.D. Mich. 2003) (quoting <u>Bowman</u> v <u>Shawnee State Univ</u>, 220 F.3d

456, 462 (6th Cir. 2000)).  "Even a transfer and demotion where the plaintiff received

the same salary and benefits did not constitute an adverse employment action."

<u>Valentine-Johnson</u>, 238 F. Supp. 2d at 916 (citing <u>Yates</u> v <u>Avco Corp</u>, 819 F.2d 630,

638 (6th Cir. 1987)).

Here, Plaintiff's claim must fail because she will be unable to establish that she

was subject to any adverse employment action.  She repeatedly received raises

throughout her employment, and there is no evidence whatsoever that such raises were any different from similarly situated employees outside her protected classification.  In fact, at times, Plaintiff received preferential treatment over other employees in terms of raises.  With regard to her job title, Plaintiff felt she should be promoted to a Purchasing Director position; however, no such position had ever existed at the Road Commission.  As John Daly testified:

> A.   Her request did not involve the creation of the position or purchasing director, her request was to be upgraded to that position.  And there was no requirement, in my opinion there was no requirement for the Road Commission to have a director for purchasing.

*       *       *       *       *

> Q.   Did you ever consider the need for such a position?
>
> A.   I did.
>
> Q.   And did you decide there was no need?
>
> A.   Yes.

*       *       *       *       *

> Q.   Do any other road commissions have purchasing directors?

*       *       *       *       *

-11-

> A.   They may have a position that's called a purchasing director, but it fits into the same position in the organization that she was at.
>
> Q.   Which was purchasing manager?
>
> A.   Yes. I couldn't find a road commission where they had a purchasing department.  And at our road commission directors, I believe, supervise departments. That was the table of organization that I dealt with. (Exhibit 31 at pp. 30-32).

Plaintiff cannot claim she was discriminated against by not being promoted to a position which did not even exist.

Additionally, Plaintiff was never subject to any discipline. (Exhibit 2 at p. 2). When she was placed on administrative leave in 2017, it was with pay, so that her complaints of a hostile work environment could be fully investigated. Her complaints involved numerous management employees. During her employment, Plaintiff had made numerous vague and general complaints of a hostile work environment against almost every management employee for whom and with whom she worked. In the end, her complaints even included Donna Poplar, another black female. Placing Plaintiff on administrative leave with pay while her complaints were investigated was Defendant Road Commission's only option.  As John Daly testified:

> A.   The reason that I placed her on administrative leave was because at that point she had filed complaints . . . with the Equal Opportunities Commission against

-12-

> all the department heads at the road commission
> except for one. She had filed previously within the
> six-month period prior to that she had filed a
> complaint against me with the EEOC. I needed to -
> There needed to be separate - If there was going to
> be impartiality with any investigation one of the
> parties needed to be removed - So the simplest thing
> to do was to remove one rather than to remove all
> five or six . . . I can't place the entire senior staff at
> the road commission on administrative leave in
> order to preserve the investigation . . .

(Exhibit 31 at pp. 58-59). However, Mr. Daly emphasized that it was a paid

administrative leave without penalty. (Id. at p. 66).

As soon as the investigation was concluded, Plaintiff was brought back to

work. At that time, she was informed that her job title had changed to Senior

Purchasing Coordinator. However, her change in title to Senior Purchasing

Coordinator involved no change in pay or responsibilities. It was not a demotion. As

Donna Poplar testified:

> Q. So did you view the title change from purchasing
> manager to senior purchasing coordinator to be a
> demotion?
>
> A. Absolutely not.
>
>       *      *      *      *      *
>
> Q. Did Ms. McClane express she viewed that as a
> demotion?

-13-

> A.    Yes.
>
> Q.    And your response was what?
>
> A.    I disagreed.
>
> Q.    Did you give her reasons?
>
> A.    Because it wasn't a demotion.  I did with her title
>        [w]hat I did with the remaining HR staff's title along
>        with the finance manager's title that was changed.

(Exhibit 36 at pp. 79-80).  Numerous other similarly situated employees went through an identical title change at the same time.  There is no evidence whatsoever that Plaintiff was treated differently than any similarly-situated employee outside her protected classification.

Plaintiff also complains that her "secretary" was being taken away from her and her office was being moved.  Her "secretary", Stephanie Jaeger, underwent a title change from Purchasing Secretary to Purchasing Associate, with expanded responsibilities, but was still going to assist Plaintiff in carrying out all purchasing functions for Defendant Road Commission.  When Plaintiff returned to work on July 10, 2017, she and Ms. Jaeger sat down together and outlined the manner in which they would carry out their duties. (Exhibit 37). Ms. Jaeger's agreed upon duties were to include typing memos, handling telephone issues, maintaining office equipment, and filing. (Id. at p. 4). Ms. Poplar was completely agreeable to the division of tasks

-14-

Plaintiff and Ms. Jaeger had agreed upon. (Exhibit 36 at p. 47). Both Ms. Jaeger's

change in title and the change in office location were completely insignificant. The

office change did not even occur until after Plaintiff was on her medical leave. Ms.

Poplar testified as to the reasons for moving the purchasing office as follows:

> A.   And one of the things I was going to do - The office
> by which Mrs. McClane and Mrs. Jaeger held at that
> particular time, that space used to accommodate the
> HR department for years. And one of the things that
> I wanted to do was bring in more related functions
> into that office that would actually enhance what we
> do in the HR department and move the purchasing
> department to another area that would be more
> suitable for the purchasing and bring it in closer
> alignment to the finance department. And in doing
> that, one of the things that we were going to do is
> that would become a space, because of my disability,
> that would be used to have the HR administrative
> assistant would operate that particular and would
> allow us the opportunity to allow visitors to come
> into a more isolated area versus walking right into
> the HR department where there was no place for
> individuals to sit.

(Exhibit 36 at pp. 36-37).

Ms. Jaeger actually preferred the new office because it was larger and contained a

window. (Id. at p. 38). Ms. Jaeger and Plaintiff would have shared this office had

Plaintiff returned from her medical leave, and it was not dissimilar from their

previously shared office. (Id. at pp. 37-38, 42-43).

-15-

As for her termination from employment, there is no evidence whatsoever that Plaintiff was treated differently than any other similarly situated employee would have been.  She had been off work for twelve (12) months on a medical leave of absence with no prospect of returning to the Road Commission.  Plaintiff cannot demonstrate that her work conditions were so objectively intolerable to a reasonable person that she was justified in remaining off work.  Policastro v Northwest Airlines, Inc., 297 F.3d 535 (6th Cir. 2002); Kocsis v Multi-Care Mgmt; 97 F.3d 876, 886 (6th Cir. 1996).  Road Commission policy calls for termination of employment under such circumstances.  The individual making the decision to terminate Plaintiff's employment was Donna Poplar, another black female.  There is no evidence whatsoever that race or gender played any role in the decision to terminate Plaintiff's employment.

For the foregoing reasons, Plaintiff will be unable to establish a prima facie case of discrimination under Title VII or the Michigan Elliott-Larsen Civil Rights Act.  As such, Count I of Plaintiff's Amended Complaint should be dismissed.

II.   PLAINTIFF WILL BE UNABLE TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 OR THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT.

The Elliott-Larsen Civil Rights Act prohibits retaliation against any person "because the person has made a charge, filed a complaint, testified, assisted, or

participated in an investigation, proceeding, or hearing under this act."   MCL

37.2701(a).  It is also unlawful to retaliate against an individual for engaging in an

activity protected by Title VII.  Barnett v Department of Veterans Affairs, 153 F.3d

338 (6th Cir. 1998), cert denied, 525 U.S. 1106 (1999).  To present a prima facie case

of retaliation, the Plaintiff must prove that he or she engaged in a protected activity,

(2) the employer knew about the activity, (3) the employer took action that was

adverse to the plaintiff, and (4) there was a causal connection between the protected

activity and the adverse employment action.  Polk v Yellow Freight Sys, Inc., 876

F.3d 527, 531 (6th Cir. 1989), accord Michael v Caterpillar Fin Servs Corp, 496 F.3d

584 (6th Cir. 2007).

In Burlington Northern & Sante Fe Ry v White, 548 U.S. 53, 68; 126 S.Ct.

2405; 165 L.Ed.2d 345 (2006), the United States Supreme Court defined an adverse

employment action for retaliation purposes as one that a reasonable employee would

have found materially adverse, which in the context of a retaliation claim means that

the action could dissuade a reasonable worker from making or supporting a charge

of discrimination.  The Supreme Court cautioned that "it is important to separate

significant from trivial harms." Id. "An employee's decision to report discriminatory

behavior cannot immunize that employee from those petty slights or minor

annoyances that often take place at work and that all employees experience." Id.

-17-

All of Plaintiff's claims of retaliation were of a de minimus nature and amounted to nothing more than petty slights and minor annoyances. No reasonable jury would find the allegedly retaliatory acts so adverse that they would dissuade a reasonable employee from making a charge of discrimination. Plaintiff's change in title from Purchasing Manger to Senior Purchasing Coordinator was not accompanied by any change in compensation or responsibilities. The change in office location was also de minimus and did not  negatively impact Plaintiff. She and her co-worker, Stephanie Jaeger, still worked in a similar configuration and assisted one another in purchasing tasks.

All of the evidence indicates that Defendant took extraordinary measures to accommodate Plaintiff. She was transferred from supervisor to supervisor in an attempt to find an arrangement that was suitable for her. Attempts were made to fully investigate all of Plaintiff's complaints and find solutions that would remediate any issues Plaintiff was having. The common denominator in all of Plaintiff's complaints was Plaintiff herself. There was simply no way to satisfy Plaintiff in her myriad complaints against most of the other employees of the Road Commission. Nonetheless, there is absolutely no evidence that Defendant bore any animosity against Plaintiff for having made any complaints or retaliated against her for those complaints in any way.

-18-

Plaintiff cannot establish a causal connection between any protected activity and her termination.  To do so, she would have to produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected activity.  Nguyen v City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).  Under the ELCRA, the protected activity must be a significant factor in her termination; not just 'a' factor.  Specifically, "[t]o establish causation, the plaintiff must show that participation in activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two."  Barrett v Kirtland Cmty. Coll., 245 Mich. App. 306, 315; 628 N.W.2d 63 (2001).

Here, Plaintiff was terminated because she had been on a medical leave of absence for twelve (12) months with no prospect of returning to work at Defendant Road Commission. (Exhibit 2 at pp. 116-117).  Defendant Road Commission had accommodated her leave of absence request for that entire twelve (12) month period.  Defendant's policies provide that if an employee is unable to work after a twelve (12) month leave of absence, then his/her employment is terminated.  There is no evidence to suggest that Plaintiff was terminated because she engaged in any protected activity.

For the foregoing reasons, Plaintiff will be unable to establish a prima facie case of retaliation under Title VII or the ELCRA.  As such, Count II of Plaintiff's

Amended Complaint should be dismissed.

III.   EVEN IF PLAINTIFF WERE ABLE TO ESTABLISH A PRIMA FACIE
       CASE OF DISCRIMINATION OR RETALIATION, DEFENDANT HAS
       ARTICULATED A LEGITIMATE NON-DISCRIMINATORY REASON
       FOR ITS ACTIONS TOWARDS PLAINTIFF, WHICH REASONS WERE
       NOT PRETEXTUAL.

Even if Plaintiff established a prima facie case, Defendant has articulated

legitimate, non-discriminatory reasons for its actions toward her. Specifically, with

regard to her termination, it was caused by her inability to return to work in twelve

(12) months according to Defendant's policies.  Plaintiff will be unable to

demonstrate that this basis is pretextual.  "Plaintiffs may show that an employee's

proffered reasons for an adverse employment action are pretext for discrimination if

the reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3)

were insufficient to warrant the action." Seeger v Cincinnati Bell Tel. Co., 681 F.3d

274, 285 (6th Cir. 2012).  Here, Plaintiff cannot create a genuine dispute as to pretext.

First, Plaintiff's termination was based in fact.  She had been off work for

twelve (12) months, and there was no indication that she was going to be able to

return to work any time soon.  Second, there is no reason to believe that anything

other than Plaintiff's inability to return to work actually motivated the action.  Until

July 2018, Defendant was planning for Plaintiff's return to work.  In her absence, her

belongings had been moved to her new office and her supervision had been

-20-

transferred back to the Finance Department. (Exhibit 36 at pp. 69-70).   Defendant

had no intention of terminating Plaintiff's employment prior to July 2018 when she

failed to return to work from her leave.   Third, inability to return to work is a

sufficient reason to warrant termination. See Edgar v JAC Prods, Inc., 443 F.3d 501,

506-507 (6th Cir. 2006).   Here, Plaintiff had been off of work for a full year on a

medical leave of absence.   There was no indication that she was going to be able to

return. Defendant's policies call for termination of an at-will employee who does not

return after a twelve (12) month leave of absence.   Plaintiff will be unable to show

that any other similarly situated employee was not terminated under substantially

identical circumstances.

Defendant had a legitimate non-discriminatory reason for Plaintiff's

termination.   Plaintiff will be unable to establish that that reason is pretextual.   As

such, Plaintiff's Amended Complaint should be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that its Motion

for Summary Judgment be granted and that Plaintiff's Amended Complaint be

dismissed with prejudice in its entirety.

Respectfully submitted,

MICHAEL R. KLUCK & ASSOCIATES

Dated: December 2, 2019            By:    s/ Thomas Derderian
                                          Thomas H. Derderian (P35106)
                                          Attorneys for Defendants
                                          4265 Okemos Road, Suite G
                                          Okemos, MI 48864
                                          (517) 349-7610
                                          derderiant@klucklaw.com

---

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of December, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Kathleen L. Bogas and Brian E. Koncius (attorneys for Plaintiff), and I hereby certify that I have mailed by United States Postal Service the Paper(s) to the following non-ECF participants: None.

/s/ Thomas H. Derderian
Michael R. Kluck & Associates
4265 Okemos Road, Suite G
Okemos, MI 48864